UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  1:20-MJ-4203 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| vs. | ) | |
| | ) | |
| TANDRE BUCHANAN, JR., | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Motion to Revoke Order of Release filed by the United States of America on June 23, 2020 ("the Government's Motion"). (Doc. No. 13.)  On June 29, 2020, Defendant filed a Brief in Opposition to the Government's Motion ("Defendant's Opposition") (Doc. No. 14), to which the Government filed a Response on June 30, 2020 (Doc. No. 15.)  For the reasons set forth below, the Government's Motion is granted only to the extent that the conditions of release are amended as provided herein.

**Facts**

At the detention hearing conducted on June 18, 2020 before Magistrate Judge Thomas M. Parker, the Government proffered the testimony of Federal Bureau of Investigation Special Agent William L. Hasty, 16 exhibits that Special Agent Hasty identified as photographs, video stills, Facebook/Instagram posts, and text messages, the affidavit of Special Agent Hasty used to secure the complaint and arrest warrant for Defendant, and the Pretrial Service Report, with no objection by Defendant.  The facts set forth below are taken from the evidence proffered at the June 18, 2020 hearing.

1

On May 30, 2020, there was a protest march planned in Cleveland, Ohio, starting at Willard Park and ending at the Justice Center.  The march began at approximately 2:00 p.m. and was scheduled to end at approximately 5:00 p.m.  Many individuals assembled peacefully, with some even actively encouraging others to do the same.

At approximately 3:30 p.m., certain individuals in front of the Justice Center began throwing rocks, bottles and other items at law enforcement officers.  Certain individuals also used spray paint to vandalize buildings, streets, and other structures throughout downtown Cleveland.

Investigators spoke to individuals who had taken photographs during the protest, who supplied the FBI with images and videos showing instances of violent or destructive conduct. Some of these images and videos or stills from the videos were proffered as exhibits and identified by Agent Hasty at the hearing.   Among the photos and videos taken were a video showing an adult black male, wearing orange sneakers, black pants, black "Army" t-shirt with yellow "ARMY" emblazoned on the front, an orange hooded sweatshirt with the word "UNMASZTRD" emblazoned on the front with black letters on white matting, and an orange head covering.  In a video, this male is seen exiting the frame of a broken plate glass window of the Colossal Cupcakes store and is then seen with a turquoise stool belonging to the store. The person then uses that stool to repeatedly smash in the plate glass window.  After the second window is broken out, the male throws the stool away and is seen heading eastbound on Euclid Avenue.

A press release was issued on June 10, 2020, requesting the assistance of the public in identifying those responsible for the theft and looting which occurred on May 30, 2020, at among others, the Colossal Cupcakes location at or about 6:30 p.m.  Multiple calls were received by investigators identifying Defendant as the person described above.  After being

taken into custody after agents secured an arrest warrant for Defendant, and during his interview, Defendant admitted to investigators that it was him smashing the metal stool into the window of Colossal Cupcakes.

The owner and employees of Colossal Cupcakes were interviewed.  The owner stated she was in fear for her life as an unknown number of people broke into her store, with her and her four employees inside. Specifically, she described what she heard as the sound of a gunshot or something similar, and she looked to her right and saw one of the two plate glass windows with a small hole in it, and then she saw the hole expand as the window shattered.  As she was moving towards the back of her store, a person who had come through the windowpane had jumped up on the counter in a really aggressive manner right in front of her.  At about that time, she heard a cinder block go right by her head.  She then locked herself in with the other four employees in the bathroom and called 911.

At least one employee unequivocally stated he observed a black male with an orange head covering and orange sweatshirt inside the store and because he had locked the entrance door to the store, anyone inside must have entered through one of the broken windows.  An employee noticed that five point of sale machines – tablets – were gone when they came out of the bathroom after the police arrived.

Evidence adduced at the hearing demonstrated, among other things, Defendant throwing a large object through the glass at Huntington Bank, shattering it; video capturing Defendant outside of Geiger's Sporting Goods and inside Heinens grocery store; a text message from Defendant's cell phone saying "I fucked downtown up"; and Defendant taking steps or actions to avoid detection afterward, to include switching his Instagram profile to private, disposing of the items he was wearing, and making representations to the investigators that were belied by the video evidence they had obtained.

On June 11, 2020, Magistrate Judge Jonathan D. Greenberg signed a criminal complaint charging Defendant with Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951.  If convicted, Defendant faces a maximum term of imprisonment of 20 years, a maximum fine of $250,000, a period of supervised release of up to three years, and a $100 special assessment.  There is no mandatory minimum sentence that is associated with the charge. There is a presumption under the law that Defendant should be granted bond.

At the June 18, 2020 hearing, Magistrate Judge Parker overruled the Government's motion for detention and set bond at $20,000, unsecured.  Magistrate Judge Parker relied heavily on the history and characteristics of Defendant, his lack of criminal history and lack of substance abuse issues, his ties to the community, the fact that he was employed, and the rating by Pretrial Services as a PTRA Category 2 risk  The Government requested a stay of the release order to seek review of his order with this Court.  That request was granted and the Government's Motion followed.

### Discussion

18 U.S.C. § 3145(a) provides:

> (a) Review of a Release Order. If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court.

> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release.

District courts exercise a de novo review of a magistrate judge's release or detention order. *United States v. Fitzhugh*, 2016 WL 4727480 (E.D. Mich. Sept. 12, 2016 (citations omitted); *United States v. Eckenrode*, 2013 WL 257052 (N.D.Ohio Jan. 23, 2013 ("A District Court reviews the release order of a Magistrate Judge *de novo*.")

18 U.S.C. § 3142 "provides the framework for the district court's analysis as to whether

release pending trial is proper." *United States v. Williams*, 2020 WL 2529356 (E.D.Tenn. May 18, 2020) (citing *United States v. Webb*, 238 F.3d 426, at *2 (6th Cir. 2000) (table opinion). "The ultimate touchstone of this analysis is 'whether there are conditions of release that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community.' § 3142(g)." *Id*. Courts must consider the following: (1) the nature and circumstances of the offense charged, including whether it is a crime involving a controlled substance; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, e.g., his or her character, mental and physical condition, family and community ties, financial resources, criminal history, and substance-abuse history; and (4) the nature and seriousness of the danger posed to the community by the defendant's potential release. *Id*.

Before the Magistrate Judge, the parties agreed that no presumption for detention existed, and that "the Defendant was presumed to be entitled to bond unless the government could prove by clear and convincing evidence that no condition or combination of bond conditions could reasonably assure the safety of the community or other persons." (Doc. No. 10, PageID # 31.)

Magistrate Judge Parker considered the content of the Pretrial Services Report completed by Pretrial Services Officer Stolarik. Office Stolarik, applying the Pretrial Risk Assessment instrument, categorized Defendant as a Category 2 risk, the second lowest rating available. Officer Stolarik recommended that Defendant be released on bond subject to conditions. (Doc. No. 10, PageID # 29.) Magistrate Judge Parker noted that the Government focused its argument for detention upon the nature and circumstances of the charged offense, consistent with 18 U.S.C. § 3142(g)(1), specifically what it contended was a violent offense. (Doc. No. 10, PageID # 30.) Magistrate Judge Parker, however, noted that defense counsel

pointed out that Defendant had strong family ties, was a lifetime resident of the community, had a safe place to live, could live somewhere where no weapons would be found; had no evidence of current substance abuse; had no criminal record whatsoever, was working two jobs, and could return to those jobs as long as he was not detained beyond the point where his personal time off days were exhausted.  (Doc. No. 10, PageID # s 30-31.)

> Magistrate Judge Parker concluded in relevant part as follows:
>
> The government's evidence did not truly address the issue the court must decide: whether the defendant was likely to comply with the court's bond requirements. The government's sole contention on this point was that defendant was not forthright with law enforcement concerning: how he came into possession of a stolen deer-hunting trophy and what time he went home after the events of May 30. And the government pointed out that defendant made his Instagram account private soon after the incidents at issue and did not keep the clothing he wore at the time of the event.  But the defense pointed out that Buchanan agreed to speak to the police and gave a 2.5-hour interview after signing a waiver acknowledging his *Miranda* rights had been given and waiving his right to be interviewed in the presence of a lawyer.  The government's evidence concerning Buchanan's likely compliance with bond conditions was not strong.
>
> The defense evidence on Buchanan's likely compliance with bond conditions was more persuasive.  Buchanan has no criminal record, comes from a strong family, is working two jobs, is not doing drugs, and runs his own tea and herb business.  Apart from the events of the day at issue, no evidence indicates Buchanan has a disposition to engage in violent conduct.  And that is undoubtedly why he was rated a PTRA Category 2 risk and why the Pretrial Services officer recommended bond.  The court quite literally has no basis upon which to conclude that Buchanan, now facing severe consequences from his alleged behavior, would not comply with the court's bond requirements.
>
> (Doc. No. 10, PageID #s 31-32.)

The Court reviews the request for detention *de novo*, and the Court notes the Government relies upon its same arguments made at the hearing to set aside Magistrate Judge Parker's Order, specifically that the conduct and acts Defendant allegedly engaged in on May 30, 2020 were violent, creating fear and chaos and damages, and supported its conclusion that no condition or combination of bond conditions would reasonably assure the safety of the community.  The Government argues that because Defendant was not forthright with law

enforcement, changed his Instagram profile to private, and disposed of the items he was wearing that day, he is not likely to comply with the Court's bond requirements.  It submits that the history and characteristics of Defendant are outweighed by the nature and circumstances of the offense and danger the defendant poses to the community.

The Court is not persuaded by the Government's arguments.  The Court finds Magistrate Judge Parker's Order to be well-supported and incorporates herein his reasoning set forth therein.  The Government has not produced sufficient evidence that Defendant's risk to the community cannot be controlled by bond conditions.  However, the Court will amend the conditions of bond to require home detention with active GPS monitoring.  Defendant is permitted to leave his home only for the purpose of employment.

Accordingly, the Government's Motion is granted only to the extent that Magistrate Judge Parker's Order is amended to include home detention with active GPS monitoring, allowing Defendant to leave his home only for employment.

IT IS SO ORDERED.


 /s/ *Pamela A. Barker*
Pamela A. Barker
United States District Court

Dated:  July 1, 2020